AARON M. KINIKINI (Bar No. 10225)
NATE CRIPPES (Bar No. 14622)
Disability Law Center
205 North 400 West
Salt Lake City, Utah  84103
Phone:  (801) 363-1347
Fax:  (801) 363-1437

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BENJAMIN THOMAS, <br><br> Plaintiff, <br><br> v. <br><br> RUSTLER LODGE, INC., <br><br> Defendant. | **<u>COMPLAINT</u>** <br><br> (Jury Demand) <br><br> Case No. _____ |

Plaintiff, BENJAMIN THOMAS ("Mr. Thomas"), as a complaint and cause of action against Defendant, RUSTLER LODGE, INC. ("Rustler Lodge"), by and through counsel, states and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil action for declaratory judgment and permanent injunctive relief to redress and prevent violation of plaintiff's rights pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*  Plaintiff seeks injunctive relief requiring defendant to correct its violations of Plaintiff's rights, prohibiting defendant from

continuing its misconduct in violation of the ADA, and from engaging in similar conduct in the future.  Plaintiff seeks attorney's fees and court costs pursuant to 42 U.S.C. § 12205.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to hear and decide Plaintiff's ADA claims pursuant to 42 U.S.C. §§ 12188-89, as the Plaintiffs' claims arise under and are based upon violations of Title III of the ADA, 42 U.S.C. §12182, *et seq*.

3.      This Court is vested with original jurisdiction of these claims pursuant to 28 U.S.C. §1331 and §2201.

4.      Venue for this action is proper in the United States District Court for the District of Utah, Central Division pursuant to 28 U.S.C. §§ 125 and 1391(b) and (c) and because the claims arose in said division and district and, further, because Defendant conducts business in such district.  The subject public accommodations immediately at issue are located in Salt Lake County, Utah.

## PARTIES

5.      Plaintiff BENJAMIN THOMAS ("Mr. Thomas") is and was at all times alleged herein a citizen and resident of the State of Utah.

6.      Defendant RUSTLER LODGE, INC. ("Rustler Lodge") is a corporation, conducting and transacting business in the State of Utah.

## OPERATIVE FACTS

7.     Mr. Thomas was and is a resident of Salt Lake County, Utah.

8.     On November 9, 2016, Mr. Thomas was involved in a catastrophic rock climbing fall.  Mr. Thomas was paralyzed for a month following the accident.  The accident caused significant damage to Mr. Thomas' spine, knees, and ankles.

9.     At various stages during the period following his accident, Mr. Thomas has needed and used a wheelchair, a walker, crutches and braces in order to achieve mobility.  His long-term prognosis is such that he is unlikely to make significant  progress from his current physical state, which is characterized by substantial, permanent impairments to his ability to stand, balance, and walk

10.     At all times relevant to the events here at issue, Mr. Thomas is and was substantially limited in the major life activities of walking and standing. He is an individual with a disability within the meaning of the ADA.  42 U.S.C. § 12102(2)(A).

11.     Following his injury, and during the course of progressing from wheelchair to walker to crutches, Mr. Thomas researched service animals, considered obtaining one, and eventually determined that he would greatly benefit from using a service animal to assist him in mitigating the effects of his disability.

12.      On July 6, 2017, Mr. Thomas acquired a dog ("Luna"), expressly intending to train her as a service animal.  He immediately began training Luna himself, basing her specific training on his particular disability needs, with the goal of making Luna able to perform tasks which would help mitigate the effects of his mobility impairments.

13.     At all times relevant here, Luna is and was a dog specifically and individually trained to help Mr. Thomas maintain his stability and balance, and to assist him with walking without falling .  Essentially, Luna has been trained to work as a counterweight for Mr. Thomas as he stands, walks, and changes direction.  She is trained to keep pace with Mr. Thomas, maintain an optimal proximity to him, and if he begins to fall in either direction, she is trained to provide resistance and tension in the opposite direction, *via* her leash, which helps Mr. Thomas regain and maintain stability.  Luna is a service animal as defined by the ADA.  28 C.F.R. § 36.104.

14.     The Rustler Lodge is a private entity, a lodge, restaurant and bar, open to the public, providing its customers with lodging and/ or a fine dining experience.  As a hotel, restaurant or bar, it is a place of public accommodation and a covered entity within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(A)-(B).

15.     On December 30, 2017, Mr. Thomas went skiing, aided by disability adaptive equipment, for the first time since his catastrophic 2016 climbing accident.  After skiing, Mr. Thomas, accompanied by Luna and a friend, attempted to go to the Rustler Lodge to have a drink.  In the Rustler Lodge parking lot, Mr. Thomas noted that the Rustler Lodge did not have any marked, handicap accessible parking stalls near the entrance, and no signage identifying accessible parking, accessible routes of travel, or designating any accessible entrance.  Mr. Thomas and his party parked in the general parking area.

16.     In order to reach the entrance, Mr. Thomas had to walk down a steep, slippery, and snowy incline. With assistance from his service dog, Luna, Mr. Thomas reached the entrance without falling.

COMPLAINT, Page 4 of 23

17.     On information and belief, Tom Pollard ("Mr. Pollard") is the General Manager of the Rustler Lodge restaurant.

18.     On information and belief, Sheridan Davis ("Ms. Davis") is the Assistant Manager of the Rustler Lodge restaurant.

19.     Once Mr. Thomas, his friend, and his service animal, Luna, were inside the Rustler Lodge, Mr. Pollard briskly approached and told them to leave.  Mr. Pollard told them that the Rustler Lodge does not permit dogs in the establishment.  Mr. Thomas, having never experienced a denial in his brief time using a service animal, was not completely aware of the legal parameters of his rights, and left the Rustler Lodge after being denied access by Mr. Pollard.

20.     Mr. Thomas was humiliated, embarrassed, and distressed by Mr. Pollard's refusal to serve him in the Rustler Lodge.

21.     After this initial denial of access on December 30, 2017, Mr. Thomas used the internet to further educate himself about federal law as it pertains to service animals and the rights of persons with disabilities to be accompanied by such animals when patronizing private businesses open to the public.  He learned that the ADA protects people like himself from denials of access based upon the use of service animals.  He learned further that Mr. Pollard's actions were unlawful and that he had a legal right to access Rustler Lodge with a service animal, even if Rustler Lodge had a policy against allowing animals generally.

22.     On January 22, 2018, Mr. Thomas returned to the Rustler Lodge, accompanied by the same friend, and with Luna, his service animal.  Mr. Thomas was now fully aware of his rights under the ADA and was prepared to assert them.  Mr. Pollard was not at the entrance on

this occasion, so Mr. Thomas and his friend proceeded to the restaurant bar and ordered drinks. As they sat at the bar, Mr. Thomas and his companion were approached by Rustler Lodge restaurant Assistant Manager, Ms. Davis, who told them that they would have to leave because dogs were not allowed on premises.  Mr. Thomas informed Ms. Davis that Luna was a service animal and that under the ADA he was entitled to be accompanied by her. Ms. Davis then left.

23.     Soon after Ms. Davis left, Mr. Pollard appeared and approached Mr. Thomas and his friend.  Because he believed Mr. Pollard would imminently attempt to eject him from the Rustler Lodge, Mr. Thomas recorded audio of the ensuing conversation on his phone.  During the ensuing recorded conversation, Mr. Pollard was aware that the entire conversation, including his own statements to Mr. Thomas, was being recorded.  A true and correct transcription of this January 22, 2018 audio recording is attached to this complaint. (*See* "Transcription of January 22, 2018 Audio Recording," Exhibit A, *attached*).

24.     When Mr. Pollard first approached, he ordered Mr. Thomas to stop recording the conversation.  Mr. Thomas refused. Then Mr. Pollard asked Mr. Thomas to leave the Rustler Lodge.  Mr. Thomas attempted to inform Mr. Pollard about the ADA, but was interrupted by Mr. Pollard who insisted that Rustler Lodge does not allow dogs, stating that "I [Mr. Pollard] understand that you have your issue with your service dog, and I have the ability to serve who I want to." Exhibit A, Transcr. 2:3-15.

25.     Mr. Thomas continued in the attempt to assert his rights, but Mr. Pollard was not open to further discussion, and even suggested he would "call the cops and have [Mr. Thomas] removed." Exhibit A, Transcr. 2:16-25.

26.     Despite his threat to do so, Mr. Pollard did not call the police on this occasion.

27.     Mr. Thomas continued his attempts to discuss his legal right to use a service animal while accessing the Rustler Lodge, suggesting, "[l]et's keep talking about this. So the ADA says . . .", but was interrupted mid-sentence by Mr. Pollard who stated, "I do not care about the ADA." Exhibit A, Transcr. 3:1-4.

28.      The conversation continued with Mr. Thomas asserting that, "You [Mr. Pollard] cannot make me leave because of my service dog." Mr. Pollard simply replied, "I can." Exhibit A, Transcr. 4:5-7.

29.     Mr. Thomas then insisted, "No, you cannot [make me leave because of my service dog]. It's against the law." To which Mr. Pollard replied, "I can make you leave, sir." Exhibit A, Transcr. 4:8-10.

30.     Mr. Pollard then asked Mr. Thomas to finish his drink, leave, and never return to the Rustler Lodge. Exhibit A, Transcr. 4:13-15.

31.     Mr. Thomas then responded, "I'm not leaving, and you're breaking the law. Are you sure you want to do this [break the law]?" Mr. Pollard replied, "You know what? Get out. Do you understand? Get out." Exhibit A, Transcr. 4:16-20.

32.     Mr. Thomas then asked if he was being asked to leave, "because I'm disabled?" In reply, Mr. Pollard offered a condescending and transparently pre-textual explanation that Mr. Thomas was being asked to leave the Rustler Lodge because of the color of his hat. Exhibit A, Transcr. 4:21-5:9.

33.     When Mr. Thomas again asserted that his dog is a service animal and should be allowed to accompany him, Mr. Pollard responded, "I don't care if your dog is a service dog or a dog. I do not allow dogs into my lodge." And when Mr. Thomas interjected, "It's a service

dog," Mr. Pollard stated, "I don't care about your needs.  I would like you to leave.  You are one

of my customers and I do not want to serve you anymore."  He then threatened to have Mr.

Thomas physically removed from the Rustler Lodge.  <u>Exhibit A</u>, Transcr. 5:12-25.

34.     When Mr. Thomas again informed Mr. Pollard that he was violating the ADA,

Mr. Pollard responded, "I don't care about the law.  I do not like you, and I would like you to

leave."  <u>Exhibit A</u>, Transcr. 6:4-7.

35.      Mr. Thomas pressed Mr. Pollard to confirm that his ejection from the lodge was

based on his use of a service dog, and Mr. Pollard affirmed, "I do not allow dogs into my lodge."

<u>Exhibit A</u>, Transcr. 6:9-11.

36.     Again, Mr. Thomas attempted to explain to Mr. Pollard the legal distinction

between "service dogs" and mere dogs under the ADA, but Mr. Pollard responded, "I don't

care."  <u>Exhibit A</u>, Transcr. 6:10-17.

37.     Mr. Pollard tried once more to suggest he was expelling Mr. Thomas from the

Rustler Lodge because he objected to the hat he was wearing.  Mr. Thomas then sought to

clarify, "[s]o before you said it was because I had a service dog."  Mr. Pollard responded, "[i]t

doesn't matter.  I would like you to leave."  <u>Exhibit A</u>, Transcr. 7:6-15.

38.     At that point, Mr. Thomas stopped the audio recording and prepared to leave,

accompanied by his friend and his service dog.  As they left, Mr. Pollard told Mr. Thomas, "I

would like it if you never came back again."  That was the last time Mr. Thomas spoke to Mr.

Pollard.

39.     Knowing he was within his legal rights to return, with his service dog, to any

place of public accommodation, including the Rustler Lodge, Mr. Thomas decided to do just

that. He made a dinner reservation for January 25, 2018 at 8:00 PM. He arrived at the Rustler Lodge on that date, approximately 10 minutes prior to his reservation. His service dog, Luna, was with him. When he asked to be seated, he was told it would be just a few minutes, and that his table was being prepared.

40.     Using his cell phone camera, Mr. Thomas recorded video of the ensuing interactions which took place on January 25, 2018. The video recording of the events described herein are in the possession of Plaintiff's counsel.

41.     Mr. Thomas continued to wait in the vestibule/ lobby area of the Rustler Lodge for approximately 20 minutes with no explanation from staff about why his table was not available even though he had a reservation.

42.     To Mr. Thomas' surprise and alarm, rather than being offered an explanation or being seated by Rustler Lodge staff, a uniformed and armed Alta Town Marshal appeared and spoke briefly to Rustler Lodge staff. The Marshal then approached, confronted, and questioned Mr. Thomas in an aggressive, intimidating manner.

43.     At the outset of the interaction with Mr. Thomas, the Marshal attempted to pet Mr. Thomas' service animal, and Mr. Thomas politely asked that he not pet her, as she was on duty as a working service dog. The Marshal then asked Mr. Thomas if he had any identification for the dog. Mr. Thomas informed the Marshal that he did not, and that the ADA did not require him to have any identification for his service animal.

44.     The Marshal continued to question Mr. Thomas about his service dog for a few minutes more. The Marshal asked whether Luna was aggressive, though she had exhibited no signs of being aggressive. He asked whether Luna was "in the act" of serving as a service dog,

even though Mr. Thomas had explicitly identified her as a service dog and clearly explained that she was working as such.  At one point, the Marshal made the somewhat curious observation that, "[w]e do have laws in this canyon, and in the State of Utah, with dogs.  And when I see a dog, I have the right to question it."

45.    This interrogation by an armed and uniformed law enforcement agent took place in the Rustler Lodge waiting area, in full view of the public.

46.    Though he was not told by the Marshal that he was under arrest, Mr. Thomas was intimidated, fearful, and reasonably believed he had no choice but to submit to the interrogation. He was therefore seized and detained as defined by the Fourth Amendment to the U.S. Constitution and controlling case law.  Further, such seizure was effected without the reasonable suspicion or probable cause required and defined by the same controlling constitutional and legal authority.

47.    Mr. Thomas was humiliated, embarrassed, intimidated and extremely fearful that he might be arrested or taken to jail because he was standing up for his rights under the ADA. Moreover, Mr. Thomas was aware during the interaction that other Rustler Lodge patrons were watching the incident, and was fearful that he would be viewed as a criminal by the public.

48.    This law enforcement interrogation, conducted by a uniformed and armed Marshal, was focused exclusively on Mr. Thomas' service dog and her presence with him in the restaurant.

49.    On information and belief, this intrusive law enforcement seizure and questioning of Mr. Thomas was conducted at the behest of Rustler Lodge personnel.

50.     Specifically, according to an Alta Marshal dispatch log and notes obtained by counsel for Plaintiff through a Utah Government Records Access and Management Act ("GRAMA" (Utah Code Ann. § 63G-2-204)) request, Mr. Pollard placed a call to Alta Marshal dispatch requesting police response and complaining that a man with a service dog was persisting in trying to access the Rustler Lodge, despite "knowing lodge does not allow dogs." (*See* "Alta Marshal's Office Dispatch Note 18-0091 & Log Entries," Exhibit B, *attached*).

51.     Approximately 30 minutes after arriving at the Rustler Lodge, including the time spent being interrogated by an Alta town Marshal,[1] Mr. Thomas was finally led to the restaurant dining room.  Mr. Thomas proceeded to look over the menu.  After several minutes, Mr. Thomas asked a server if he could speak with Mr. Pollard, as he wanted an explanation about why the police were called, and why he was subjected to the humiliating scene in the waiting area.  A few minutes later, the server returned and said that Mr. Pollard was busy and could not speak with Mr. Thomas.

52.     Meanwhile, the law enforcement officer who previously interrogated Mr. Thomas in the waiting area stood with Rustler Lodge staff at the hostess stand and stared at Mr. Thomas. The Marshal continued to watch Mr. Thomas for the entire time he was seated in the dining area.

53.     After approximately 10 minutes in the dining area, Mr. Thomas asked the server if he could move to the separate bar area, as the dining area was very crowded and because he felt uncomfortable being continuously surveilled by the Marshal who had interrogated him in the

---

[1] The identity of this Alta Town Marshal is not known to Plaintiff, but he is identified as "Deputy C3" in the Alta Marshal's Office records related to this incident. *See* "Alta Marshal's Office Dispatch Note 18-0091 & Log Entries," Exhibit B, *attached*.

waiting area.  The server stated that he could move to the bar, and that he could order his dinner

there instead of in the dining room.

54.     When Mr. Thomas moved to the bar area, the Marshal continued to monitor him,

and in fact followed him into the bar where he sat several feet away and continued to watch him

intently.  Mr. Thomas ordered an orange juice at the bar.  Mr. Thomas was never offered the

opportunity to order food as he sat at the bar for several more minutes, though other customers'

orders were taken.  After finishing his juice, and because he was refused further service while

also being followed and menaced by an armed Marshal, Mr. Thomas was forced to leave the

Rustler Lodge.

55.     As he left the Rustler Lodge that evening, Mr. Thomas again asked to speak to

Mr. Pollard or other management personnel in hopes of lodging a complaint about the evening's

ordeal.  He was refused such opportunity.

56.     That evening, January 25, 2018, Mr. Thomas spent approximately 60 minutes at

the Rustler Lodge.  Despite having a dinner reservation, he waited 30 minutes before being

seated.  During that 30 minute wait he was publicly accosted and interrogated about his use of a

service animal by an armed and uniformed law enforcement officer.  When finally seated in the

restaurant, and then the bar, he was never given the opportunity to order dinner, and was

continuously surveilled and stalked by the same law enforcement officer. Thus, Mr. Thomas was

never allowed or provided full and equal enjoyment of Rustler Lodge's services.  Further, such

access was denied solely on the basis of Mr. Thomas' disability and his use of a service animal.

57.     The actions of Rustler Lodge staff, specifically Mr. Pollard, in calling the Alta

Marshal's office in order to enlist law enforcement to harass and intimidate Mr. Thomas, were

outrageous and motivated by a desire to punish and retaliate against Mr. Thomas for persistently

asserting his rights under the ADA on that and previous occasions.

58.     The actions of Rustler Lodge staff, specifically Mr. Pollard, in the enlistment of

local Alta law enforcement to harass and intimidate Mr. Thomas, were outrageous and motivated

by a desire to interfere with and prevent Mr. Thomas's enjoyment of his rights under the ADA,

and to coerce Mr. Thomas into leaving the Rustler Lodge.

59.     Mr. Thomas left the Rustler Lodge that evening in a state of extreme emotional

distress, anguish, anxiety, embarrassment, and fear.  He was reasonably fearful that he would be

followed by the Alta Town Marshal and subjected to further harassment, detention, or arrest.  He

was frustrated, angry, and devastated by the experience of being discriminated against,

intimidated, publicly humiliated, and denied service solely on the basis of his disability and

because he uses a service animal.

60.     Mr. Thomas continues to suffer physical, psychological, and emotional damage

caused by the repeated actions of Rustler Lodge staff in their interactions with him on the several

occasions described herein. In the months following these incidents, Mr. Thomas has suffered

ongoing physical and psychological manifestations of the emotional distress and anguish caused

by defendant's actions, including, but not limited to, tension headaches, loss of sleep, depression,

anxiety, and various exacerbations of his chronic orthopedic ailments.

61.     Despite being repeatedly denied service at Rustler Lodge, Mr. Thomas desires to

one day return there and be served on the same basis as other patrons who do not have

disabilities and who do not require the use of service animals.  However, Mr. Thomas is fearful

that Rustler Lodge staff will subject him to the same discriminatory denials, humiliating treatment, emotional abuse, and/ or further law enforcement harassment.

## CAUSES OF ACTION

62.     Plaintiff, Mr. Thomas, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference.

63.     Mr. Thomas brings this action under Title III of the ADA, 42 U.S.C. §12182, *et seq*.

64.     Private entities affecting commerce such as "a restaurant, bar, or other establishment serving food or drink" are places of public accommodation under the ADA.  *Id.* at § 12181(7)(B).

65.     Title III of the ADA prohibits, *inter alia*, discrimination "on the basis of disability in the full and equal enjoyment of the . . . goods, services, privileges, advantages, or accommodations of any place of public accommodation."  *See* 42 U.S.C. § 12182(a) (1990).

66.     Further, a public accommodation must "maintain in operable working condition those features of the facilities and equipment that are required to be readily accessible to and usable by persons with disabilities."  28 C.F.R. § 36.211(a).

67.     Under Title III, discrimination includes "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the

nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12181(b)(2)(A)(ii).

68.     Moreover, a public accommodation, generally, "shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). A service animal may only be excluded if "[t]he animal is out of control and the animal's handler does not take effective action to control it; or [t]he animal is not housebroken." *Id.* at §36.302(c)(2).

69.     It is unlawful for a public accommodation or any person to retaliate against a person with a disability who asserts their rights under the ADA, or who opposes any violation of their rights under the ADA. 42 U.S.C. § 12203(a).

70.     It is unlawful for a public accommodation or any person to coerce, threaten, intimidate or interfere with any person in the exercise or enjoyment of their rights under the ADA. 42 U.S.C. § 12203(b).

71.     As described, *supra*, defendant Rustler Lodge, through the deliberate, intentional, reckless, and outrageous acts of its agents and employees, denied Mr. Thomas access to its services solely on the basis of his disability, specifically, based upon his use of a service animal. At no time was Mr. Thomas' service animal, Luna, out of control, nor was there ever any indication that she was not housebroken.

72.     The Rustler Lodge also does not have the appropriate accessible parking spaces, or signage, as required by the ADA and implementing regulations.

73.     The Rustler Lodge does not have an accessible route of travel between the parking lot and the main entrance, as required by the ADA and implementing regulations.

74.     Because defendant Rustler Lodge, through the deliberate, intentional, reckless, and outrageous acts of its agents and employees, refused Mr. Thomas access and denied his full and equal access to its facility based solely on his disability and service animal, the Rustler Lodge has violated Title III of the ADA.

75.     Because the Rustler Lodge failed to maintain accessible features in its parking lot, and leading to its main entrance, the Rustler Lodge has violated Title III of the ADA.

76.     Mr. Thomas was merely attempting to access the services, as a paying customer, provided to the public by the Rustler Lodge.  The Rustler Lodge's blanket denial of access and its refusal to reasonably accommodate Mr. Thomas' disability, solely on the basis of Mr. Thomas' use of a service animal, constitutes intentional disability-based discrimination.

77.     The Rustler Lodge's failure to maintain required accessible features in its parking lot and entrance constitutes intentional disability-based discrimination.

78.     Defendant Rustler Lodge's conduct, described above, was intentional and taken in disregard of the rights afforded Mr. Thomas under the ADA.

## Count I
### (Failure to Maintain Accessible Features in Violation of the ADA)

79.     Plaintiff, Mr. Thomas, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

80.     Title III of the ADA requires a public accommodation to "maintain in operable working condition those features of the facilities and equipment that are required to be readily

accessible to and usable by persons with disabilities." 28 C.F.R. § 36.211(a). A public accommodation is required to have a minimum number of accessible parking spaces, and a minimum number of those must be van accessible. 36 C.F.R. § 1191 app. B, 208.2.

81.     Rustler Lodge does not have any accessible stalls or van accessible stalls in its parking lot. Accessible parking spaces should also be on the "shortest accessible route from parking to an entrance." 36 C.F.R. § 1191 app. B, 208.3. Rustler Lodge has no accessible route from its parking lot to its main entrance. Rustler Lodge is in violation of the foregoing ADA accessibility requirements, and Plaintiff was denied full and equal access to Rustler Lodge on those bases.

## Count II
### (Denial of Access in Violation of the ADA)

82.     Plaintiff, Mr. Thomas, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

83.     Title III of the ADA prohibits private entities providing public accommodations, such as the Rustler Lodge, from discriminating against a person with a disability because of his disability or by denying him the opportunity to participate in or benefit from the services, privileges, advantages, or accommodations of the entity. 42 U.S.C. § 12182(b)(1)(A)(); 28 C.F.R. § 36.202(a). Mr. Thomas is a person with a disability as defined by the ADA.

84.     The Rustler Lodge's refusal to allow Mr. Thomas and his service animal access discriminates against him by denying him the opportunity to participate in and benefit from the

services, privileges, advantages, and accommodations the Rustler Lodge offers, in violation of the ADA and implementing regulations.

## Count III

### (Failure to Make Reasonable Modification for Service Animal in Violation of the ADA)

85.     Plaintiff, Mr. Thomas, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

86.     Pursuant to Title III of the ADA, the Rustler Lodge is prohibited from failing to make reasonable modifications to policies, practices, or procedures when they are necessary for an individual with a disability to fully and equally enjoy any services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to fundamentally alter the nature of the same.  42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

87.     The Rustler Lodge's refusal to modify its policies, practices, or procedures to allow Mr. Thomas and his service animal into its restaurant prevents him from fully and equally enjoying any of the services, facilities, privileges, advantages, or accommodations.  The admission of Mr. Thomas with his service animal is not a fundamental alteration to the services, facilities, privileges, advantages, or accommodations, nor did his service animal meet either of the permitted exceptions.  Defendant Rustler Lodge's actions result in discrimination based on Mr. Thomas' disability, in violation of Title III of the ADA and implementing regulations.

## Count IV
### (Imposition of Criteria Tending to Screen Out Individuals with Disabilities in violation of the ADA)

88.     Plaintiff, Mr. Thomas, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

89.     Pursuant to Title III of the ADA, the Rustler Lodge is prohibited from imposing or applying eligibility criteria that screens out or tends to screen out individuals with disabilities or any class of individuals with disabilities from fully and equally enjoying their services, unless that criteria can be shown to be necessary to receive those services.  42 U.S.C. § 12182(b)(2)(A)(i).

90.     In calling local Alta law enforcement in order to subject Mr. Thomas to detention and questioning by an armed, uniformed Marshal, Defendant Rustler Lodge imposed discriminatory eligibility criteria on Mr. Thomas.  Mr. Thomas was only nominally allowed access after being questioned by law enforcement about his service dog, and his further attempt to enjoy the restaurant was monitored and chilled by law enforcement.  No other patron of the Rustler Lodge was interrogated and monitored by law enforcement as a condition of being admitted.

## Count V

**(Retaliation in violation of the ADA)**

91.      It is unlawful for a public accommodation or any person to retaliate against a person with a disability who asserts their rights under the ADA, or who opposes any violation of their rights under the ADA.  42 U.S.C. § 12203(a).

92.      By calling the Alta Town Marshal's office to enlist an armed, uniformed law enforcement officer to interrogate Mr. Thomas explicitly because he asserted his ADA rights to enjoy a public accommodation with a service dog, the Rustler Lodge and Mr. Pollard intentionally, and maliciously violated the ant-retaliation provisions of the ADA.

## Count VI

**(Interference, Coercion & Intimidation in violation of the ADA)**

93.      It is unlawful for a public accommodation or any person to coerce, threaten, intimidate or interfere with any person in the exercise or enjoyment of their rights under the ADA.  42 U.S.C. § 12203(b).

94.      By threatening to call the police in order to coerce and intimidate Mr. Thomas into submitting to its discriminatory actions; and by actually calling the Alta Town Marshal's office to enlist an armed, uniformed law enforcement officer to intimidate, interrogate, and harass Mr. Thomas explicitly because he asserted his ADA rights to enjoy a public accommodation with a service dog, the Rustler Lodge and Mr. Pollard intentionally and maliciously violated the ADA's prohibitions against coercion, intimidation, and interference with the access rights conferred by the ADA.

## Count VII

### (Intentional Infliction of Emotional Distress)

95.     Plaintiff, Mr. Thomas, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

96.     In denying Mr. Thomas access on several occasions solely because he uses a service animal, and by enlisting armed, uniformed Alta town law enforcement to confront, seize, question, intimidate, and harass him, Defendant Rustler Lodge and Mr. Pollard intentionally, recklessly, and maliciously engaged in intolerable and outrageous conduct that caused Mr. Thomas severe emotional distress.

97.     Any reasonable person would have known that taking such outrageous, intolerable, and malicious action would cause severe emotional distress.

98.     As a result of the outrageous conduct of Rustler Lodge and Mr. Pollard, Mr. Thomas has suffered and continues to suffer emotional distress, mental anguish, and related adverse physical impacts.

99.     The conduct of Defendant Rustler Lodge and Mr. Pollard was deliberate, willful, malicious, and taken with the intention of causing severe emotional distress, and in flagrant disregard of Mr. Thomas' lawful right to access the Rustler Lodge on the same basis as persons without disabilities.

100.    The conduct of Defendant Rustler Lodge violates the common tort of intentional infliction of emotional distress, as interpreted by Utah law.

**DECLARATORY RELIEF**

101.    This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between Plaintiff and Defendant.

102.    Plaintiff, Mr. Thomas, is entitled to a declaratory judgment concerning each of the Rustler Lodge's violations of the ADA and implementing regulations, and specifying Mr. Thomas' rights with regard to the Rustler Lodge's services and facilities.

**INJUNCTIVE RELIEF**

103.    This action seeks injunctive relief pursuant to 42 U.S.C. § 12188 and Rule 65 of the Federal Rules of Civil Procedure.

104.    Plaintiff, Mr. Thomas, is entitled to a permanent injunction requiring Defendant Rustler Lodge to correct each of its violations of the ADA and implementing regulations as such relate to Mr. Thomas, and requiring the Rustler Lodge to cease its discriminatory exclusion of Mr. Thomas and his service animal from its services, programs and facilities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mr. Thomas requests that the Court:

1.    Exercise jurisdiction over this action;

2.    Enter a declaratory judgment on behalf of Mr. Thomas, declaring that Defendant Rustler Lodge's actions are in violation of Title III of the ADA and implementing regulations;

3.    Enter a permanent mandatory injunction ordering the Rustler Lodge to cease both its exclusion of Mr. Thomas and his service animal, and its exclusion of disabled persons generally from full and equal participation in the benefits, services and activities of the Rustler

Lodge when the exclusion or denial occurs by reason of such disability; and by ordering that the Rustler Lodge make its physical facilities useable and accessible to people with disabilities in compliance with applicable ADA architectural accessibility requirements;

4.      Enter an order requiring Defendant Rustler Lodge to pay punitive damages as a jury may assess;

5.      Enter an order requiring Defendant Rustler Lodge to pay compensatory damages in an amount to be determined at trial;

6.      Award to Mr. Thomas all costs and attorney's fees expended herein and assess all such costs against Defendant Rustler Lodge;

7.      Grant Mr. Thomas such other and further relief as may be deemed just, equitable and appropriate by the Court.

## **DEMAND FOR JURY TRIAL**

8.      Plaintiff hereby requests a jury trial.

RESPECTFULLY SUBMITTED, this the **24th** DAY OF **April, 2018.**

DISABILITY LAW CENTER
Attorneys for Plaintiff

By /s/   Aaron Kinikini____
AARON M. KINIKINI
NATE CRIPPES